UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BROADSIGN INTERNATIONAL, LLC,

       Plaintiff,

 -v-                                                    No.  16 CV 04586-LTS

T-REX PROPERTY AB,

       Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiff BroadSign International, Inc. ("Plaintiff" or "BroadSign") brings this action against Defendant T-Rex Property AB ("Defendant" or "T-Rex"), seeking a declaratory judgment of non-infringement of U.S. Patent No. RE39,470 ("the '470 patent"), U.S. Patent No. 7,382,334 ("the '334 patent"), and U.S. Patent No. 6,420,603 ("the '603 patent") (collectively, the "Patents-in-Suit"), as well as a declaratory judgment that BroadSign has intervening rights with respect to the '470 patent.

The Court has jurisdiction of this action pursuant to 35 U.S.C. §§ 271, et seq., and 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss each of Plaintiff's claims for lack of subject matter jurisdiction.  T-Rex asserts that there is no case or controversy between BroadSign and T-Rex.

The Court has reviewed thoroughly all of the parties' submissions and arguments. For the following reasons, the motion to dismiss is granted.

BACKGROUND

The following recitation of facts is drawn from the Amended Complaint (Docket Entry No. 10, Amended Complaint ("Am. Compl.")), and from affidavits and exhibits submitted by both parties in connection with this motion practice.[1]

Plaintiff supplies "hardware and software solutions to operators of networks of digital displays." (Am. Compl. ¶ 10.) Defendant is the "assignee and owner of the right, title, and interest in and to the Patents-in-Suit," which concern the control and coordination of digital displays. (Am. Compl. ¶¶ 8, 9.) Over the last several years, T-Rex has sued "at least five" of BroadSign's customers, which are various entities that make, use, or sell complete digital signage systems, "for [direct] patent infringement on one or more of the Patents-In-Suit." (Am. Compl. ¶ 11.) As a result, Plaintiff has received "numerous requests for indemnification" from its customers, who have identified provisions of their respective license agreements that support their requests. (Declaration of Sandra Beauchesne in Opp'n to Def.'s Mot. to Dismiss ("Beauchesne Decl."), Docket Entry No. 23, ¶¶ 13, 20, Ex. D, I, J.)

On June 21, 2016, BroadSign contacted T-Rex to request a meeting with T-Rex to discuss a potential business agreement after T-Rex had initiated lawsuits against BroadSign's customers. (Beauchesne Decl. ¶ 15.) In those lawsuits, T-Rex identified as allegedly directly infringing products which were, at least in part, sold and delivered by BroadSign.[2]

---

[1] "'[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits,' in which case 'the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" Winfield v. City of New York, No. 15CV5236-LTS-DCF, 2016 WL 6208564, at *3 (S.D.N.Y. Oct. 24, 2016) (citations omitted).

[2] For example, in an action against Health Media Network ("HMN"), T-Rex did not identify BroadSign by name in the complaint, but "HMN's counsel advised BroadSign

BroadSign asserts that the parties have "had direct discussions and in-person meetings in which T-Rex has demanded that BroadSign take a license to the [P]atents-in-[S]uit" to stop T-Rex's suits against BroadSign's customers. (Am. Compl. ¶ 15.) On June 28, 2016, BroadSign's President and CEO, as well as its outside patent consultant, traveled to Sweden and met with T-Rex's principals. (Beauchesne Decl. ¶ 15.) No agreement was reached during that meeting. (Id.) The parties continued communicating via email, phone, and Skype throughout the following weeks. (Declaration of Mats Hylin in Supp. of Mot. to Dismiss ("Hylin Decl."), Docket Entry No. 27, ¶¶ 11-14.) While the negotiations were ongoing in late June 2016, but before the parties had reached any agreement that T-Rex would not initiate suit against any additional BroadSign customers, T-Rex informed BroadSign that it had sued another of BroadSign's customers. (Hylin Decl. Exhibit C.) The parties continued their discussions after this notification.

On July 9, 2016, T-Rex sent a draft license agreement to BroadSign, under which, "in exchange for an undetermined payment by BroadSign, T-Rex would give BroadSign a fully paid[-]up[,] non-exclusive license to practice [the Patents-In-Suit]," as well as "'all other Patents that are now owned or controlled by T-Rex on the United States and Canada . . .'," and which would protect BroadSign's customers "to the extent they operate digital display systems consisting of BroadSign's products." (Beauchesne Decl. ¶ 16 (citing Exhibit P, Docket Entry

---

that' HMN's [allegedly infringing] platform for its digital advertising network is the software that it has licensed from BroadSign.'" (Beauchesne Decl. ¶ 7.) In its suit against JCDecaux, T-Rex specifically alleges that BroadSign's "Showscreens," the "Mallscape network," "digital billboards," and "digital airport advertising network, including the Prestige network" infringe each of the three Patents-In-Suit. (Beauchesne Decl. ¶ 9.) BroadSign sold the hardware and software comprising these products to JCDecaux. (Id.)

No. 23-43).)  The accompanying email stated that T-Rex was "[amenable] to receiving edits and input from BroadSign concerning the licensing agreement."  (Hylin Decl., ¶ 15.)  Plaintiff asserts Defendant sent that agreement "without prior discussion [between the parties] of a license."  (Beauchesne Decl. ¶ 16.)  T-Rex alleges that BroadSign requested the draft agreement and that BroadSign's CEO threatened to sue T-Rex.  (Hylin Decl. ¶¶ 3, 10.)  Plaintiff proffers that BroadSign interpreted the proposed license agreement as a "demand[] by T-Rex that BroadSign take a license to the [P]atents-in-[S]uit to prevent [the initiation of] further patent infringement actions against BroadSign's customers."  (Am. Compl. ¶ 16.)  Plaintiff allegedly considered the proposed license agreement, "coupled with" the news of a[n additional,] recently-filed patent infringement action against yet another BroadSign customer[3], to be "a veiled threat that if BroadSign did not take a license, T-Rex would continue to sue BroadSign's customers and perhaps BroadSign itself."  (Beauchesne Decl. ¶¶ 17-18.)

        BroadSign communicated its dissatisfaction with this course of events in a July 17, 2016, email, to which T-Rex responded, apologizing for potential misunderstandings and seeking further "constructive dialogue."  (Hylin Decl. ¶ 16, Ex. F.)  Communications between the parties ended shortly thereafter.  (Hylin Decl. ¶ 16.)  BroadSign filed this action for declaratory judgment on September 15, 2016.

---

[3]     Since the parties first initiated their discussions on June 21, 2016, T-Rex has sued at least two additional BroadSign customers, bringing the total number of suits to seven. (Beauchesne Decl. ¶ 4.)

DISCUSSION

Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (vacated on other grounds) (internal citations and quotation marks omitted). "The Court's first inquiry must be whether it has the constitutional or statutory authority to adjudicate a case. If there is no subject matter jurisdiction, the Court lacks power to consider the action further." ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 668 (S.D.N.Y. 2010) (citation omitted).

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)). However, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," Morrison, 547 F.3d at 170 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)), and such a showing may not be "made by drawing from the pleadings inferences favorable to the party asserting" subject matter jurisdiction. Morrison, 547 F.3d at 170 (quoting APWU v. Potter, 343 F.3d 619 623 (2d Cir. 2000)). In determining whether subject matter jurisdiction of the claims exists, the court "may consider evidence outside the pleadings." Morrison, 547 F.3d at 170.

Declaratory Judgment Jurisdiction

Declaratory relief is "intended to … settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the right or a disturbance of the relationships." Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc., No. 02 Civ. 10338, 2003 WL 21277114, at *4, 2003 U.S. Dist. LEXIS 9193, at *4 (S.D.N.Y. June 2, 2003) (citations and internal quotation marks omitted). When establishing declaratory judgment subject matter jurisdiction, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune Inc. v. Genentech Inc., 549 U.S. 118, 127 (2007) (citations and quotation marks omitted). MedImmune effectively "lower[ed] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute" from the previous "reasonable apprehension test." ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 668 (S.D.N.Y. 2010). Still, a patentee must "affirmatively engage in 'conduct that can be reasonably inferred as demonstrating intent to enforce a patent'" in order for a declaratory judgment plaintiff to establish jurisdiction. Id. (quoting Hewlett–Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1363 (Fed. Cir. 2009)).

There is no bright-line rule for whether a dispute is "a case of actual controversy" between parties as required by the Declaratory Judgment Act. Prasco LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008). When considering whether a direct, "substantial controversy" in a patent dispute exists "consider[ing] all of the circumstances," courts have weighed: "whether there has been prior litigation between the parties or brought by the defendant on related technology, whether the defendant has refused to sign a covenant not to sue or stay

litigation, and whether the defendant has made a direct or implied threat to assert its rights against the declaratory judgment plaintiff." ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010). Courts have also considered the nature and extent of communication between the parties and a patentee's aggressive enforcement strategy, even in the absence of direct threats. See Arris Group v. British Telecomm., 639 F.3d 1368, 1378 (Fed. Cir. 2011); Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 737–38 (Fed. Cir. 1988). Courts, however, may be skeptical that a patentee's litigation enforcement strategy is in fact "aggressive" if it "appears to involve suing . . . users, not . . . suppliers." See Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 906-07 (Fed. Cir. 2014)

A defendant's suits against a plaintiff's customers are insufficient by themselves to establish a case or controversy between the supplier-plaintiff and the patent holder-defendant. See Microsoft, 755 F.3d at 904. Suits against a supplier's customers may support jurisdiction if either "(a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced contributory infringement based on the alleged acts of direct infringement by its customers." Arris Group, 639 F.3d at 1375. Customer requests for indemnification, without an obligation to indemnify, do not suffice to support jurisdiction, however. See Microsoft, 755 F.3d at 904. The elements of contributory infringement require that "a patent holder must show . . . that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted a material part of the invention; (c) the supplier knew its product was especially made or especially adapted for use in an infringement of the patent; and (d) the product is not a staple article or commodity of commerce suitable for substantial noninfringing use." Arris Group, 639 F.3d at 1376 (quotation marks and citations omitted).

Whether the Jurisdictional Standard Is Met Here

Plaintiff asserts that it initiated this action both "because T-Rex has sued several of [its] customers[,] accusing the products BroadSign sold to them of infringing the [P]atents-in-[S]uit and because direct communications between BroadSign and T-Rex made it apparent that T-Rex is adverse to BroadSign." (Pl. Opp. Br., Docket Entry No. 21, at 1.) Defendant asserts that Plaintiff "fails to identify a direct dispute between it[self] and T-Rex," also fails to "assert that it is obligated to indemnify its customers," and "does not adequately allege that BroadSign may be liable for induced or contributory infringement based on its customers' direct infringement." (Def. Opening Br., Docket Entry No. 15, at 3.)

The Court, having reviewed the parties' proffers and arguments, finds that, even "tak[ing] all facts alleged in the complaint as true and draw[ing] all reasonable inferences in favor of plaintiff," Plaintiff has not met its "burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists."[4] See Morrison, 547 F.3d at 170. Plaintiff has failed to "show that there is a substantial controversy, between [itself and Defendant]" and that they are "parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." See MedImmune, 549 U.S. at 127.

First, Plaintiff fails to adequately plead that there is a direct, "substantial controversy" here. Plaintiff does not allege in the Amended Complaint nor assert in its motion papers that there has been "prior litigation between the parties or brought by the defendant on

---

[4] The Court recognizes that a court is empowered to resolve disputed material issues of fact in addressing a motion to dismiss a complaint for lack of subject matter jurisdiction, and that the parties' versions of the events relevant to this dispute conflict in significant ways. However, because, as explained below, Plaintiff's proffers are insufficient to support jurisdiction even if they are taken as true, no material factual conflicts need be addressed to resolve this motion practice.

related technology" against Plaintiff.  See ICOS Vision Sys. Corp., N.V, 699 F. Supp. 2d at 667.  Even if T-Rex did "demand" that Plaintiff consider the license agreement it proposed "to prevent [the initiation of] further patent infringement actions against BroadSign's customers," as Plaintiff asserts, (see Am. Compl. ¶ 16), there is no indication of any discussion or threat of litigation against Plaintiff.  See ICOS Vision Sys. Corp., N.V., 699 F. Supp. 2d at 667.  Nor, drawing all reasonable inferences in favor of Plaintiff, do Defendant's actions constitute an "aggressive enforcement strategy" warranting a finding of subject matter jurisdiction here, as Defendant's strategy "appears to involve suing . . . users," including BroadSign's customers, "not . . . suppliers," such as BroadSign.  See Microsoft Corp., 755 F.3d at 906-07.

    Second, BroadSign fails to establish that a justiciable controversy between Plaintiff and Defendant is framed by T-Rex's suits against Plaintiff's customers.  Plaintiff does not allege that it is obligated to indemnify its customers, despite its receipt of "numerous requests for indemnification" from its customers in which the customers identified provisions of their respective license agreements that support their requests.  (Beauchesne Decl. ¶¶ 13, 20, Ex. D, I, J.)  Such "requests for indemnification," without an allegation of Plaintiff's "obligation to indemnify, do not create jurisdiction."  See Microsoft, 755 F.3d at 904.

    Moreover, BroadSign has not alleged facts sufficient to support a claim that "there is a controversy between the" parties "as to [BroadSign's] liability for induced contributory infringement based on the alleged acts of direct infringement by its customers."  See Arris Group, 639 F.3d at 1375.  Taking the facts alleged in the light most favorable to Plaintiff and without additional facts, BroadSign has sufficiently pled that T-Rex could establish the first two elements of a contributory infringement cause of action—that BroadSign's "product was used to commit acts of direct infringement" by BroadSign's customers and that the use of the

product by BroadSign's customers "constituted a material part of the invention."  See id. at 1376.  Plaintiff, however, has failed to allege facts indicating that T-Rex could establish the two remaining elements of the cause of action, as nothing in the Amended Complaint or the proffered averments suggests that BroadSign "knew its product was especially made or especially adapted for use in an infringement of the [Patents-in-Suit]" or that "the [software] is not a staple article or commodity of commerce suitable for substantial noninfringing use."  See id.  Thus, T-Rex's suits against Plaintiff's customers are insufficient to establish a case or controversy as to a potential contributory infringement claim against Plaintiff BroadSign.

Despite T-Rex's suits against BroadSign's customers and the provision of a draft licensing agreement, T-Rex's alleged actions are not indicative of "adverse legal interests" as to BroadSign.  See MedImmune 549 U.S. at 127.  Plaintiff has not shown that a "substantial controversy" between itself and Defendant exists, and thus has not met its burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  See Morrison, 547 F.3d at 170; MedImmune 549 U.S. at 127.

CONCLUSION

For the foregoing reasons, T-Rex's motion to dismiss the complaint for lack of subject matter jurisdiction is granted.

Plaintiff may move for leave to file a further Amended Complaint.  Any such motion must be filed no later than 21 (twenty-one) days from the date of this Memorandum Opinion and Order, (i.e., by **January 31, 2018**), and must be accompanied by a proposed Second Amended Complaint, a blacklined comparison of the proposed Second Amended Complaint to the Amended Complaint, showing all changes, and a memorandum of law.  The motion will be

briefed in accordance with the schedule set forth in S.D.N.Y. Local Civil Rule 6.1(b). Failure to make such a timely motion, or the denial of the motion as futile, will result in dismissal of the Amended Complaint in its entirety for lack of subject matter jurisdiction, without further advance notice.

The pre-trial conference currently scheduled for January 12, 2018, at 10:45 a.m. is adjourned <u>sine die</u>.

Docket Entry No. 14 is resolved.

SO ORDERED.

Dated: New York, New York
      January 10, 2018

      /s/ Laura Taylor Swain
     LAURA TAYLOR SWAIN
     United States District Judge