```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
```

BROADSIGN INTERNATIONAL, LLC,

       Plaintiff,

  -v-                                                                               No. 16-CV-04586-LTS-HBP

T-REX PROPERTY AB,

       Defendant.

```
-------------------------------------------------------x
```

## MEMORANDUM OPINION AND ORDER

Plaintiff BroadSign International, LLC ("Plaintiff" or "BroadSign") brings this action against Defendant T-Rex Property AB ("Defendant" or "T-Rex"), seeking declaratory judgments of noninfringement and invalidity of U.S. Patent No. RE39,470 ("the '470 patent"), U.S. Patent No. 7,382,334 ("the '334 patent"), and U.S. Patent No. 6,430,603 ("the '603 patent") (collectively, the "Patents-in-Suit"), as well as a declaratory judgment that BroadSign has intervening rights with respect to the '470 patent.

On January 10, 2018, this Court issued a Memorandum Opinion and Order (Docket Entry No. 40, the "January Opinion") granting T-Rex's motion to dismiss the Amended Complaint (Docket Entry No. 10, the "AC") in its entirety. In the January Opinion, the Court granted BroadSign permission to move for leave to file a further Amended Complaint.

On February 1, 2018, BroadSign moved for leave to file a Second Amended Complaint (Docket Entry No. 42) and, in accordance with the Court's instructions, appended to its motion its proposed Second Amended Complaint (Docket Entry No. 44-1, the "SAC"), a blackline comparison showing all proposed changes to the AC, and a memorandum of law.

The Court has jurisdiction of this action pursuant to 35 U.S.C. §§ 271 et seq., and 28 U.S.C. §§ 1331 and 1338.

The Court has considered carefully all of the parties' submissions, and for the reasons stated below, BroadSign's motion for leave to file the SAC is granted.

BACKGROUND

The Court assumes the parties' familiarity with the underlying context of the case, which is laid out in detail in the January Opinion. (January Opinion at 2-4.) In the January Opinion, the Court dismissed BroadSign's complaint for lack of subject matter jurisdiction, concluding that the allegations regarding Defendant's suits against BroadSign's customers and Defendant's actions in connection with discussions initiated by BroadSign, as described in Plaintiff's Amended Complaint, did not constitute an "aggressive enforcement strategy" warranting a finding of a case or controversy. (Id. at 9.) The Court further concluded that BroadSign had failed to allege facts indicating that T-Rex could state a contributory infringement cause of action against BroadSign. (Id. at 9-10.) Specifically, BroadSign failed to allege its product was especially made or especially adapted for use in an infringement of the Patents-in-Suit at the time it sold its products to customers, and that its software was not a staple article or commodity of commerce suitable for substantial noninfringing use. (Id. at 8-10.) Because Plaintiff had not demonstrated that a "substantial controversy" existed between the parties, it had not met its burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. (Id. at 10.)

The following abbreviated recitation of facts is drawn from BroadSign's SAC, the well-pleaded factual allegations of which are taken as true for purposes of this motion practice.

BroadSign supplies "hardware and software solutions to operators of networks of digital displays." (SAC ¶ 11.) T-Rex is the "assignee and owner of the right, title, and interest in and to the Patents-in-Suit," which concern the control and coordination of digital displays. (Id. ¶¶ 9, 10.) Over the last several years and during the course of this lawsuit, T-Rex has sued "at least seven" of BroadSign's customers, which are various entities that make, use, or sell complete digital signage systems, "for [direct] patent infringement on one or more of the Patents-in-Suit." (Id. ¶ 29.) The SAC includes new allegations that, in its suits against BroadSign's customers, T-Rex has specifically identified components supplied by BroadSign that allegedly infringe the Patents-in-Suit, and has compared the limitations of at least one claim of each patent to a product that includes BroadSign components and software. (Id. ¶¶ 30-40.) The SAC also proffers new allegations that T-Rex has filed complaints against at least 15 other "suppliers of digital out-of-home media software and/or hardware" that are direct industry competitors of BroadSign, alleging that those suppliers' digital signage products infringe upon the Patents-in-Suit. (Id. ¶¶ 12-28.) Plaintiff also proposes expanded allegations regarding contacts in which T-Rex allegedly demanded that BroadSign enter into a licensing agreement. (Id. ¶ 47.)

BroadSign proffers new allegations that it "has knowledge of T-Rex's allegations" that certain components of a product it supplies "function in a way that meets each limitation of at least one claim of each of the" Patents-in-Suit. (Id. ¶¶ 42, 45.) BroadSign also alleges that its products are built to order for its customers. (Id. ¶ 46.) Plaintiff alleges that "T-Rex's actions have placed a cloud over BroadSign and its business," and that it seeks to "move forward without the imminent and ever-present threat of litigation." (Id. ¶ 49.) The SAC also adds causes of action seeking declarations that the Patents-in-Suit are invalid. (Id. ¶¶ 76-87.)

DISCUSSION

Federal Rule of Civil Procedure 15 provides that the court may permit a party to amend its pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). Such leave may be denied on grounds of futility, however, if the proposed amended pleading could not withstand a motion to dismiss, such as a motion under Rule 12(b)(1) asserting lack of subject matter jurisdiction, or one under Rule 12(b)(6) for failure to state a claim. Griffith-Fenton v. Coldwell Banker Mortg., No. 13 CV 7449, 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014); Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted). The party opposing the motion to amend bears the burden of establishing that the amendment would be futile. Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008).

Motion to Dismiss Standard

Under the Rule 12(b)(1) standard, the Court is authorized to dismiss a complaint for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (vacated on other grounds) (internal citations and quotation marks omitted). "The Court's first inquiry must be whether it has the constitutional or statutory authority to adjudicate a case. If there is no subject matter jurisdiction, the court lacks power to consider the action further." ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citation omitted).

In reviewing a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all

reasonable inferences in favor of plaintiff." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)).  However, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," id. (quoting Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000)), and such a showing may not be "made by drawing from the pleadings inferences favorable to the party asserting" subject matter jurisdiction.  Id. (quoting APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2000)).  In determining whether subject matter jurisdiction over the claims exists, the Court "may consider evidence outside the pleadings."  Id.

Jurisdiction to Render the Requested Declaratory Judgments

Defendant asserts that the proffered amendments would be futile because Plaintiff has not proffered facts sufficient to demonstrate that there is a justiciable case or controversy concerning BroadSign's potential infringement of the Patents-in-Suit.  Declaratory relief is "intended to . . . settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the right or a disturbance of the relationships." Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc., No. 02 CV 10338, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) (citations and internal quotation marks omitted).

When a court is determining whether there is subject matter jurisdiction to render a declaratory judgment, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune Inc. v. Genentech Inc., 549 U.S. 118, 127 (2007) (citations and quotation marks omitted).  The controversy between defendant and plaintiff must be "'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an

opinion advising what the law would be upon a hypothetical state of facts.'" Id.  A "case of actual controversy," in the language of the Declaratory Judgment Act, is one falling into the category of "Cases" and "Controversies" that are justiciable under Article III of the Constitution of the United States.  Id.

There is no bright-line rule for whether a dispute is "a case of actual controversy" between parties within the meaning of the Declaratory Judgment Act.  Prasco LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008).  However, courts have found a direct, substantial controversy in patent disputes when parties pursue an aggressive litigation strategy, Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 906-07 (Fed. Cir. 2014), or establish a valid induced contributory infringement claim.  See Arris Grp. v. British Telecomm., 639 F.3d 1368, 1375-81 (Fed. Cir. 2011).

BroadSign's Aggressive Litigation Strategy Claim Against T-Rex

When deciding whether a direct, "substantial controversy" in a patent dispute exists, "consider[ing] all of the circumstances," courts have weighed:  "whether there has been prior litigation between the parties or brought by the defendant on related technology, whether the defendant has refused to sign a covenant not to sue or stay litigation, and whether the defendant has made a direct or implied threat to assert its rights against the declaratory judgment plaintiff."  See ICOS Vision Sys. Corp., N.V., 699 F. Supp. 2d at 668; see also Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 737 (Fed. Cir. 1988).  Courts have also considered the nature and extent of communication between the parties and a patentee's aggressive enforcement strategy, even in the absence of direct threats.  See Arris Grp., 639 F.3d at 1378.  For example, declaratory judgment jurisdiction may exist where a patentee repeatedly

communicates implicit accusations of patent infringement during protracted negotiations.  See Microsoft Corp., 755 F.3d at 903-04.  Courts, however, may be skeptical that a patentee's litigation enforcement strategy is in fact "aggressive" if it "appears to involve suing . . . users, not . . . suppliers."  See id. at 906-07.

As the Court noted in the January Opinion, a defendant's suits against a plaintiff's customers are insufficient by themselves to establish a case or controversy between the supplier-plaintiff and the patent holder-defendant.  See id. at 904.  Nor do customer requests for indemnification without an obligation to indemnify suffice to support jurisdiction.  Id.  However, BroadSign argues that the SAC contains factual allegations sufficient to support an inference that "Plaintiff is under threat of litigation because T-Rex's aggressive litigation strategy involves asserting the Patents-in-Suit against **both** customers **and suppliers**."  (Docket Entry No. 43, Memorandum in Support of Plaintiff's Motion for Leave to Amend the Complaint Pursuant to Fed. R. Civ. P. Rule 15 ("Pl. Opening Br."), at 3 (emphasis in original).)  In its opposition to Plaintiff's motion, T-Rex argues that the SAC does not contain facts sufficient to establish that the suppliers it has sued "are actually 'suppliers similarly-situated to BroadSign'," arguing that T-Rex's previous suits against "some suppliers of unrelated products [are] insufficient to establish an 'aggressive' litigation campaign" indicative of a direct or implied threat that T-Rex will assert its rights against BroadSign.  (Docket Entry No. 48, Defendant T-Rex Property, AB's Memorandum of Law in Opposition to Plaintiff BroadSign International, LLC's Motion for Leave to Amend ("Def. Br."), at 2-4.)

While BroadSign proposes allegations that T-Rex's "aggressive litigation strategy" involves "suppliers" and not just customers (Pl. Opening Br. at 3), BroadSign's allegations regarding litigation against those suppliers fail to demonstrate plausibly that the

products accused in those cases are sufficiently similar to BroadSign's that T-Rex could reasonably be expected to assert similar infringement claims against BroadSign. The SAC merely alleges that competitive products have been accused, without demonstrating technical comparability or providing any other factual basis for anticipation of an infringement claim. Thus, BroadSign's contention that T-Rex's aggressive litigation strategy frames a case or controversy as between T-Rex and BroadSign fails.

T-Rex's Potential Claim of Induced Contributory Infringement Against BroadSign

BroadSign argues that a controversy exists between the parties regarding BroadSign's liability for induced or contributory infringement. (Pl. Opening Br. at 4-8.) A supplier such as BroadSign may state a case or controversy if "there is a controversy between the patentee and the supplier as to the supplier's liability for induced contributory infringement based on the alleged acts of direct infringement by its customers." Arris Grp., 639 F.3d at 1375. The elements of induced contributory infringement require that "a patent holder must show . . . that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted a material part of the invention; (c) the supplier knew its product was especially made or especially adapted for use in an infringement of the patent; and (d) the product is not a staple article or commodity of commerce suitable for substantial noninfringing use." Id. at 1376 (quotation marks and citations omitted). In the January Opinion, the Court found that, although BroadSign sufficiently pled in the AC that T-Rex could establish the first two prongs of an induced contributory infringement action against BroadSign, the AC failed to sufficiently plead facts supporting the third and fourth elements. (January Opinion at 9-10.) BroadSign had "failed to allege facts indicating that . . . [it] knew its product was especially made or especially

adapted for use in an infringement of the [Patents-In-Suit]" or that "the [software was] not a staple article or commodity of commerce suitable for substantial noninfringing use." (January Opinion at 10 (quoting Arris Grp., 639 F.3d at 1376).)

T-Rex does not contest that BroadSign has sufficiently pled the first two elements of induced contributory infringement: BroadSign's product was allegedly used to commit acts of direct infringement, and the product's use was a material part of the invention used by BroadSign's customers. Instead, T-Rex argues that BroadSign still fails to overcome the deficiencies as to the last two elements of induced contributory infringement. (Def. Br. at 5-7.)

BroadSign asserts that its proposed amended pleading contains factual allegations sufficient to satisfy the third element of an induced contributory infringement claim because it now "has knowledge that its products are especially made or especially adapted for use in providing the functionality that T-Rex accuses of infringement." (Pl. Opening Br. at 7; see SAC ¶ 42.) In support of this assertion, BroadSign cites excerpts from T-Rex's complaint against a BroadSign customer, which allege that (i) BroadSign's product infringes specific claims of the Patents-in-Suit, and (ii) all of BroadSign's products are custom made. (Pl. Opening Br. at 5-7.)

For a supplier to "know" its product was especially made or adapted for use in a patent infringement, the supplier must have had knowledge of the patent at the time of the sale constituting contributory infringement, not only after the transaction had already occurred. See Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488-91 (1964). In Aro, the Supreme Court held that the accused induced infringer was only liable for the patent infringements made after he was notified of the patent's existence and infringing use; any infringement before the notice did not meet the required knowledge standard. Id.

Although BroadSign does not allege that it knew of the patent's existence before T-Rex sued BroadSign's customers, BroadSign asserts that it has the requisite knowledge now, and it seeks to protect itself against claims based on ongoing sales of its products. (SAC ¶¶ 42, 49.) BroadSign's lack of knowledge when T-Rex initially brought suit against BroadSign's customers does not preclude claims based on sales activity after T-Rex specifically alleged that BroadSign's product infringes upon the Patents-in-Suit. That is because BroadSign seeks prospective, rather than retrospective, relief. BroadSign seeks a declaratory judgment for the purpose of protecting its ongoing business activities, and is not seeking adjudication of the legality of its past conduct. (See SAC ¶¶ 48, 49.) That is, after all, the purpose of the Declaratory Judgment Act: to prevent "putting the [plaintiff] to the choice between abandoning his rights or risking prosecution." MedImmune, 549 U.S. at 129. A declaratory judgment action allows a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." Capo Inc. v. Dipotics Med. Prod., Inc., 387 F.3d 1352, 1354 (2d Cir. 2004). Therefore, according to the allegations of the SAC, BroadSign's future sales will be made with knowledge of T-Rex's patents. See Aro Mfg. Co., 377 U.S. at 488-91. Thus, BroadSign sufficiently alleges it has knowledge of the Patents-in-Suit and the allegedly infringing use going forward.

The SAC also alleges that all of BroadSign's products are built to order for its customers, which satisfies the fourth element of an induced contributory infringement claim. (See SAC ¶ 46.) A party may be liable for induced contributory infringement if it "sells a component with knowledge that the component is especially designed for use in a patented invention, and is not a staple article of commerce suitable for substantial noninfringing use."

Worldtech Sys., Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1316 (Fed. Cir. 2010). Here, as BroadSign alleges its products are built to order for customers who are the subject of T-Rex's infringement lawsuits, those products are "especially designed for use" in the accused invention. See id.

In conclusion, because BroadSign's allegations now satisfy the last two elements of an induced contributory infringement claim, BroadSign sufficiently frames a case or controversy between itself and T-Rex with respect to infringement of the Patents-in-Suit.

T-Rex's Mootness Argument

T-Rex argues that granting Plaintiff leave to file a further amended complaint would be futile, because all of its litigation against BroadSign's customers has been resolved, and this case is therefore moot. (Def. Br. at 7-8.) T-Rex's argument is without merit. "A declaratory action for a judgment of invalidity is based on a fear of suit under the patent. Such fear is not dependent on being held liable for infringement" in a particular case, or on the scope of any ongoing litigation. See Morton Intern., Inc. v. Cardinal Chem. Co., 967 F.2d 1571, 1575 (Fed. Cir. 1992). "Nothing short of the patentee's unconditional guarantee not to [bring suit] under any circumstances ordinarily will remove that apprehension and thereby jurisdictionally moot the claim for declaratory relief." Id. at 1576.

Even if T-Rex's lawsuits against BroadSign's customers have been resolved, there is no information before the Court suggesting that T-Rex has expressly disavowed any and all future lawsuits against BroadSign regarding the Patents-in-Suit. Because BroadSign is seeking a declaratory judgment to ensure its "business can move forward without the imminent and ever-present threat of litigation," its action is not moot. (See SAC ¶ 49.)

<u>CONCLUSION</u>

For the foregoing reasons, BroadSign's motion for leave to file a Second Amended Complaint is granted. BroadSign is directed to file the SAC no later than **July 23, 2018**.

This case is being referred to Magistrate Judge Pitman for general pretrial management concurrently with the issuance of this Memorandum Opinion and Order. The parties are directed to contact Judge Pitman's chambers promptly to arrange for an initial pretrial conference.

This Memorandum Opinion and Order resolves Docket Entry No. 42.

SO ORDERED.

Dated: New York, New York
      July 13, 2018

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              United States District Judge